[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO STRIKE COUNTERCLAIM (#135)
The defendants, Trading Cove Associates, Waterford Gaming and Waterford Group (counterclaim plaintiffs), on November 15, 2000, filed an answer to the first amended complaint, as well as a counterclaim against Leisure Resort Technology, Inc. (Leisure Resort) and Lee Tyrol (Tyrol), in his individual capacity as the alleged founder, president and shareholder of Leisure Resort. The counterclaim asserts claims for breach of contract and breach of the implied covenant of good faith against Leisure Resort and Tyrol.
Leisure Resort filed a timely motion to strike the counterclaim against Tyrol, arguing that he is not a party plaintiff against whom a counterclaim may be asserted, and the counterclaim does not contain facts sufficient to pierce the corporate veil of Leisure Resort. The counterclaim plaintiffs objected to the motion to strike on the grounds that Leisure Resort does not have standing to file a motion on behalf of Tyrol, who did not join in the motion; and even if Leisure Resort had standing, the counterclaim pleads facts sufficient to pierce Leisure Resort's corporate veil. CT Page 7952
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Citation omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Seashell Associates, 244 Conn. 269,270, 709 A.2d 558 (1998). "A motion to strike admits all facts well pleaded." Parsons v. United Technology Corp., 243 Conn. 66, 68, 700 A.2d 655
(1997). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.) Liljedahl Bros., Inc. v.Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990). "[The motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). "The court must construe the facts in the complaint most favorably to the plaintiff." Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . ." (Citation omitted; internal quotation marks omitted.) Id.
"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . ." (Citation omitted; internal quotation marks omitted.) Gay Lesbian Law Students Assn. v. Board ofTrustees, 236 Conn. 453, 466, 673 A.2d 484 (1996). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue. . . ." (Citations omitted.) Malerba v. Cessna Aircraft Co., 210 Conn. 189, 192,554 A.2d 287 (1989).
In Malerba, the Connecticut Supreme Court held that the plaintiff in a negligence action had standing to move to strike the defendant's third party complaint, as follows:
The question . . . is whether the third party complaint and the parties it draws into the action create a risk of direct injury to the original plaintiff. Injury in this context includes procedural injury to the cause of action. . . . It is apparent that Practice Book § 117 [now § 10-11] thus arms a third party defendant with the full panoply of procedural options available to address not only the claim of the third party plaintiff but also the claim of the original plaintiff against the original CT Page 7953 defendant. The addition of two defendants with perhaps greater insight as to both the factual and legal ramifications of the original cause of action creates at least a colorable claim of a likelihood of injury to the plaintiff's cause of action. This being the case, we conclude that the plaintiff has standing to challenge the sufficiency of the third party complaint.
Id., 192-93. The counterclaim asserted against Tyrol, who is not a party to the original action, raises at least a colorable claim of a likelihood of injury to the plaintiff's cause of action similar to the "procedural injury" recognized by our Supreme Court in Malerba. Leisure Resort therefore has standing to challenge the sufficiency of the counterclaim as to Lee Tyrol.[1]
It is undisputed that the viability of the counterclaim against Tyrol is dependent upon whether the pleading sufficiently pierces Leisure Resort's corporate veil. The Connecticut law on piercing the corporate veil is set forth in Zaist v. Olson, 154 Conn. 563, 573-74, 227 A.2d 552
(1967), as follows in pertinent part:
 Courts will disregard the fiction of a separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . Under such circumstances, the general rule which recognizes the individuality of corporate entities and the independent character of each in respect to their corporate transactions, and the obligations incurred by each in the course of such transactions, will be disregarded, where . . . the interests of justice and righteous dealing so demand. . . . The circumstance that control is exercised merely through dominating stock ownership, of course, is not enough. . . . There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will, or existence of its own and is but a business conduit for its principal.
(Citations omitted; internal quotation marks omitted.) Id.
The Connecticut Supreme Court has recognized two tests to determine when piercing the corporate veil is appropriate: the instrumentality test and the identity test, as follows in pertinent part:
CT Page 7954 The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . . The identity rule has been stated as follows: If plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.
(Citations omitted; emphasis in original; internal quotation marks omitted.) Angelo Tomasso, Inc. v. Armour Construction Paving, Inc.,187 Conn. 544, 553-54, 447 A.2d 406 (1982).
"The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under exceptional circumstances." Davenport v. Quinn, 53 Conn. App. 282, 301, 730 A.2d 1184
(1999).
The portion of the counterclaim that purportedly pierces Leisure Resort's corporate veil is found in paragraph 14 of the first count, which reads as follows:
14. Upon information and belief, Tyrol completely controlled and dominated the finances, policy and business practices of Leisure Resort in respect to the filing of the 2000 lawsuit such that Leisure Resort was his mere instrumentality and had, with regard to this lawsuit, no separate mind, will, or existence of its own. At the time of the 2000 lawsuit, Leisure Resort had itself been dissolved and continued to exist and operate as a corporation solely for winding CT Page 7955 up and liquidation purposes.
The same language is incorporated by reference in the second count of the counterclaim. In this court's opinion, these allegations do not serve to pierce Leisure Resort's corporate veil under either test recognized by the supreme court, and the counterclaim plaintiffs have failed to cite any authority applying the instrumentality and/or identity tests to a similar pleading. Indeed, the quoted allegations merely state the procedure by which a dissolved corporation has chosen to wind up its financial affairs.
Moreover, the allegations contained in paragraph 14 of the first count of the counterclaim, and incorporated by reference in the second count, are assertions made under "information and belief" of mere conclusions unsupported by facts. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) Novametrix Medical Systems v. BOCGroup, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). The allegations contained in the counterclaim are insufficient to invoke the court's authority to find the exceptional circumstances necessary to pierce Leisure Resort's corporate veil.
The motion to strike the counterclaim as to Lee Tyrol is granted. Leisure Resort is hereby ordered to respond to the counterclaim on or before June 21, 2001, being fifteen days from the date of this order. The motion for default by the counterclaim defendants against Leisure Resort (#153.75) for failing to respond to the counterclaim is denied.
ROBERT F. McWEENY, JUDGE